IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OREST TODUA | : | |
|     *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALEJANDRO MAYORKAS, | : | |
| SECRETARY U.S. DEPARTMENT | : | |
| OF HOMELAND SECURITY | : | |
| | : | |
| TRACEY RENAUD, ACTING | : | No. 21-2738 |
| DIRECTOR, USCIS | : | |
| | : | |
| TERRI ROBINSON, DIRECTOR, USCIS | : | |
| Overland Park, KS | : | |
|     *Defendants*. | : | |

MEMORANDUM

On May 17, 2021, the United States Citizenship and Immigration Services ("UCSIS") denied Plaintiff Orest Todua's ("Todua") I-485 Application to Adjust Status on the basis that he is ineligible to adjust status under section 245(k) of the Immigration and Nationality Act. Todua asks us to review USCIS's denial of his I-485 application and grant mandamus relief in the form of an order compelling USCIS to reopen and grant his I-485 application.

Defendants Alejandro Mayorkas, Secretary of the United States Department of Homeland Security, Tracy Renaud, Acting Director of USCIS, and Terri Robinson, Director of the USCIS Service Center in Overland, Kansas (collectively, "Defendants") move to dismiss Todua's amended complaint, arguing Todua has failed to state a claim upon which relief can be granted. For the following reasons, we will grant Defendants' motion.

I.  **BACKGROUND**[1]

---

[1] We "accept as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and construe[] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). We draw the following facts from the Complaint. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint,

1

Todua is an adult Georgian citizen. Am. Compl. ¶ 1. He entered the United States on September 22, 2016 on a B-1/B-2 temporary visa, which authorized him to remain in the country until March 21, 2017. *Id.* ¶ 10. Todua remained in the United States after his lawful status expired. On August 3, 2017, less than 180 days after his B-1/B-2 status expired, Todua concurrently filed two forms: an I-485 Application for adjustment of status to become a Lawful Permanent Resident ("LPR") and a Form I-140, an employment-based immigrant visa petition. *Id.*

On February 11, 2019, USCIS denied Todua's Form I-140 employment-based immigrant visa petition that he had filed concurrently with his I-485 application and had been pending since August 3, 2017. Am. Compl. ¶ 10; Ex. B, ECF No. 2-1, at 7.

On March 21, 2019, with his first I-485 Application pending, Todua filed a second Form I-140, and a second I-485 Application. Ex. C, ECF No. 2-1 at 10–11.

On July 3, 2019, USCIS denied Todua's first I-485 Application because his underlying Form I-140 Form had been denied. Am. Compl. ¶ 10; Ex. B, ECF No. 2-1, at 7–8. The denial letter explained, "[a] review of your file indicates that an Immigrant Petition for Alien Worker (Form 1-140) was filed by Orest Todua on his own behalf on August 3, 2017. Form 1-140 was subsequently denied on February 11, 2019. A review of USCIS records fails to demonstrate that you are the beneficiary of an approved immigrant visa petition." Ex. B, ECF No. 2-1, at 8.

On February 7, 2020 USCIS approved Todua's second Form I-140 petition. Am. Compl. ¶ 11.

In 2019, USCIS granted Todua's request for advance parole which permitted him to leave the United States and return while his second I-485 Application remained pending. *See* Ex. D, ECF

exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

No. 2-1 at 15. Todua left the country on August 2, 2020 and reentered the country on August 5, 2020 under advance parole. *Id.* at 17. His advance parole extended until August 3, 2021. *Id.* On September 4, 2020, Todua filed a third I-485 Application to adjust status. *Id.* ¶ 12. On October 30, 2020, USCIS denied Todua's second I-485 Application based on his failure to maintain lawful status after his B1/B2 visa expired on March 21, 2017. *See id.* at 23. On May 17, 2021, USCIS denied Todua's third I-485 Application because the aggregate period during which he "failed to maintain a lawful status… exceeds the 180 day maximum excusable under INA 245(k)." Am. Compl. ¶ 12 (quoting Ex. F, ECF No. 2-1 at 23). Todua has exhausted his available administrative remedies. *Id.* ¶ 7.

On June 18, 2021, Todua initiated this action. *See* Compl., ECF No. 1. The same day, Todua filed his amended complaint challenging USCIS's denial of his I-485 application to adjust status.[2] Todua asserts claims under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702, 706, and the Mandamus Act, 28 U.S.C. § 1361, alleging he suffered a legal wrong because USCIS erroneously and arbitrarily denied his I-485 application to adjust status. *See* Am. Compl., ECF No. 2. Todua asserts he is entitled to judicial review of the erroneous and arbitrary denial and requests that we issue mandamus relief compelling an adjudication approving Todua's Form I-485. *See id.* ¶¶ 29, 32. Todua also asserts a claim under the Fifth Amendment of the United States Constitution, alleging the denial of his I-485 application deprived him of due process of law. *Id.* ¶ 33. Defendants

---

[2] The amended complaint is accompanied by seven exhibits. *See* ECF No. 2-1. Exhibit A is a copy of Plaintiff's visa, which includes a B1/B2 designation, while Exhibit B consists of a copy of USCIS's notice of receipt of Todua's Form I-140 and I-485 Application, and decision denying his I-485 Application. Exhibit C includes notices provided to Plaintiff indicating USCIS's receipt of his second Form I-140, and a second I-485 Application, and the decision denying his I-485 Application. Exhibit D consists of a copy of Todua's I-94 arrival/departure record. Exhibit E includes a notice provided to Plaintiff indicating USCIS's receipt of his third I-485 Application. Exhibit F consists of the decision denying Todua's third I-485 Application, and Exhibit G is a July 14, 2008 Memorandum from Donald Neufeld, the USCIS Acting Associate Director of Domestic Operations.

moved to dismiss Todua's amended complaint on September 22, 2021 and Todua responded in opposition on September 27, 2021. ECF Nos. 9, 10. Defendants submitted a reply on October 20, 2021, and Todua filed a surreply on October 22, 2021. ECF Nos. 11, 12.

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Our Court of Appeals requires us to apply a three-step analysis in assessing a 12(b)(6) motion: (1) we "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;' " (2) we "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;' " and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675). We permit "a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

The APA requires agencies to engage in "reasoned decisionmaking," *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (internal quotation marks omitted). Judicial review of whether an agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,"

under the APA is narrow and courts may not substitute their own judgment for the agency's. 5 U.S.C. § 706(2)(A); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). However, courts are "the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). If "Congress has directly spoken to the precise question at issue" and "unambiguously expressed [its] intent," both the court and the agency are bound by the plain language Congress chose, and no deference is owed to an agency's contrary interpretation. *Id*. at 842-43 & n.9.

### B. Statutory Framework

Section 245(a) of the Immigration and Nationalities Act ("INA"), codified at 8 U.S.C. § 1255(a), permits a noncitizen "inspected and admitted or paroled into the United States," to obtain "an adjustment of status." § 1255(a). To be eligible, the noncitizen seeking a LPR status must have an "admission" into the United States, which the INA defines as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A).

Section 1255 also sets forth exceptions to the ability to adjust status for certain categories of noncitizens. *See* §§ 1255(c), (k). Relevant here, Section 1255(c) bars an otherwise eligible applicant from receiving a discretionary adjustment of status if he or she:

> continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States…[and] any alien who was employed while the alien was an unauthorized alien, as defined in section 1324a(h)(3) of this title, or who has otherwise violated the terms of a nonimmigrant visa.

§§ 1255(c)(2), (8). Section 1255(k) creates an exemption to Section 1255(c)(2) and (8)'s bar to adjustment of status. Section 1255(k) provides a 180-day grace period for certain employment-

based applicants who would otherwise be ineligible for adjustment of status under Section 1255(c). The 180-day grace period is available to a noncitizen who is in the United States "pursuant to a lawful admission" and, "subsequent to such lawful admission has not, for an aggregate period exceeding 180 days ... failed to maintain continuously, a lawful status." § 1255(k)(2). Thus, a noncitizen seeking LPR status whose lawful status has expired may seek protection under § 1255(k)'s grace period if the duration of his expired lawful status has not exceeded 180 days. *See id.*

The INA defines the terms "admissions" and "admitted" as "the lawful entry of the alien into the United Sates after inspection and authorization by an immigration officer." § 1101(a)(13)(A). "An alien who is paroled under section 1182(d)(5) of this title...[3] shall not be considered to have been admitted." § 1101(a)(13)(B).

### III.    DISCUSSION[4]

#### A. We will dismiss Todua's APA Claim

Defendants ask us to dismiss Todua's APA claim, arguing that his one "admission" into the United States occurred in 2016, when he arrived on a B1/B2 visa. According to Defendants, because Todua has accrued more than 180 days of unauthorized presence after his visa expired in 2017, he is ineligible for an adjustment of status under Section 1255. Todua provides several

---

[3] 8 U.S.C. 1182(d)(5) permits the Attorney General to parole any alien into the United States.

[4] We have jurisdiction under 28 U.S.C. § 1331 and Section 704 of the APA to review Todua's APA claim (Count I) which challenges USCIS's determination of Todua's statutory eligibility for adjustment of status. *See Pinho v. Gonzales*, 432 F.3d 193, 203–04 (3d Cir.2005); *see also Uddin v. Dir. of Bureau of Citizenship & Immigr.*, 437 F. App'x 196, 199 (3d Cir. 2011). The agency action at issue here concerned a determination that Todua is legally ineligible for adjustment of status. *See* Ex. G, ECF No. 2-1. The denial of status adversely affected him, and it has not been made non-reviewable by statute. *See Pinho*, 432 F.3d at 203–04. We have jurisdiction over Todua's Count II, which seeks to compel USCIS to approve his I-485 application(s), under § 28 U.S.C. § 1361 ("[D]istrict courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). Finally, we have jurisdiction over Todua's claim of denial of due process under the Fifth Amendment of the U.S. Constitution under 28 U.S.C. § 1331.

theories of eligibility. First, Todua argues he maintained his lawful status through his successive applications or that any failure he had to maintain lawful status was "through no fault of his own or for technical reasons." Am. Compl. ¶¶ 18–21, 22. In the alternative, he argues his parole into the United States in August 2020 constituted a new "admission" or "admissions" for purposes of calculating the 180 days provided in Section 1255(k). We will address his theories in turn.

1. **Whether Todua maintained a lawful status while his applications were pending or his failure to maintain lawful status was excused**

Todua alleges that his lawful status never lapsed because his pending applications overlapped. He alternatively alleges that even if he did fail to maintain a lawful status, he did so "through no fault of his own or for technical reasons," and therefore the Subsection (c) bars do not apply to him at all.

   a. <u>Lawful Status</u>

Section 1255(a) provides that a noncitizen seeking an adjustment of status have been "inspected and admitted or paroled into the United States," must "make[ ] an application for such adjustment," must be both "eligible to receive an immigrant visa" and "admissible to the United States for permanent residence," and must have "an immigrant visa ... immediately available to him at the time his application is filed." We assume for the purposes of this motion that Todua satisfied these prerequisites.

However, 1255(c) provides that certain categories of noncitizens are nonetheless ineligible to obtain LPR status even though they meet 1255(a)'s prerequisites. These categories include noncitizens who have worked without authorization before filing an application for status adjustment, or who have not continuously maintained a lawful immigration status since entering the United States "(other than through no fault of [their] own or for technical reasons)." § 1255(c)(2). Also included is a noncitizen who "was employed while the alien was an unauthorized

alien ... or who has otherwise violated the terms of a nonimmigrant visa." § 1255(c)(8). Subsection (k) then provides that some noncitizens who entered the country lawfully may nonetheless be eligible to adjust their status provided that they do not fail to maintain lawful status for more than 180 days in aggregate. § 1255(k).

The INA does not define "lawful status," but the USCIS regulations define "lawful immigration status," as limited to six categories of lawful aliens. *See* 8 C.F.R. § 245.1. The regulation provides that "lawful immigration status" "*will only* describe the immigration status of an individual who has lawful permanent resident status, nonimmigration status, refugee, asylee, or parole status. 8 C.F.R. § 245.1(d)(1) (emphasis added). The implementing regulation does not include a general category of aliens whose lawful status expired during the pendency of an application to adjust their status. *See id.* Courts read the terms "lawful status" and "lawful immigration status" interchangeably and read "lawful status" in Subsection (k) as "concerned with the same kind of status" as in Subsection (c). *See, e.g.*, *Dhuka v. Holder*, 716 F.3d 149, 157, 158 (5th Cir. 2013).

Todua first argues that he was in "lawful status" while his applications were pending. *See* Am. Compl. ¶¶ 18–21. Defendants admit that at the time Todua filed his first I-486 application, he fell within the limited exception Subsection (k) carves out to Subsection (c) because he had been out of lawful status for less than 180 days. *See* Def. Br., ECF No. 9-1 at 2. However, Defendants disagree that Todua maintained any kind of lawful status after his visa expired on March 21, 2017 or that lawful status could accrue from his previous application(s).

Defendants cite several cases rejecting the argument that pending applications excuse a failure to maintain lawful status or somehow create lawful status. *See Dhuka*, 716 F.3d at 157, 158; *Chaudhry v. Holder*, 705 F.3d 289, 291 (7th Cir. 2013). In his response brief and surreply,

Todua attempts to distinguish these cases.[5] He argues he is distinguishable from the applicants in *Dhuka* and *Chaudhry* because Todua had no gaps between his successive applications where the other applicants did. Pl. Br., ECF No. 10 at 6. Todua has not provided any support for his claim that the absence of gaps between successive applications could have any kind of effect on his eligibility.

Recently our sister court rejected the argument that pending applications excuse a failure to maintain lawful status. *See Marupov v. Mayorkas,* No. 21-CV-1978-JMY, 2021 WL 4477221, at *5 (E.D. Pa. Sept. 30, 2021) (Younge, J).[6] The court relied on *Chaudhry*, which explained that were the Seventh Circuit to adopt the plaintiff's similar reasoning, "a nonimmigrant could indefinitely extend her eligibility for adjustment of status, despite the expiration of her lawful nonimmigrant status, simply by filing successive applications. This would thwart the basic aim of 8 U.S.C. § 1255(k)…it would instead perversely encourage nonimmigrants to file non-meritorious applications to forestall ineligibility." *Marupov*, 2021 WL 4477221, at *5 (quoting *Chaudhry*, 705 F.3d at 292). In *Marupov*, Judge Younge found the plaintiff could "not maintain lawful immigration status and advance to lawful permanent residency merely because Plaintiffs' employment-based applications remained pending." *Id.*

We find this reasoning applies equally to Todua's argument that successive applications without gaps could maintain lawful status. A rule adopting Todua's reasoning, that successive applications without gaps extends eligibility for adjustment of status, would equally thwart the

---

[5] In his response brief, Todua also distinguishes *Bokhari*, which does not discuss the effect pending applications have on eligibility under Section 1255. Rather, in *Bokhari*, the Fifth Circuit held that employment authorization did not provide the applicant with lawful immigration status. *Bokhari v. Holder*, 622 F.3d 357 (5th Cir. 2010).

[6] The litigant making the argument was represented by plaintiff's counsel in this case.

aims of §1255(k) by providing a truly interminable grace period during which an applicant could indefinitely extend his eligibility. *See Chaudhry*, 705 F.3d at 292; *Dhuka*, 716 F.3d at 159.

Todua's other arguments that he was in lawful status after he filed his first application for status, which somehow carried over to his subsequent applications, also fail. Todua relies on a 2008 memo issued by then-Acting Director of USCIS, Donald Neufeld to argue he was in lawful status after the date he filed his first application for status, which somehow extended to his subsequent applications. *See* Am. Compl. ¶¶ 20–21 (citing Memorandum from Donald Neufeld, Acting Assoc. Dir., Domestic Operations, HQDOMO 70/23.1–P (July 14, 2008), Ex. G, ECF No. 2-1). We do not see how the memo supports his position. The Neufeld memo discussed Subsection (k)'s exception to the continuous lawful status requirement. It explains how the 180-day grace period should be determined if an alien had a valid status when he filed for adjustment, his status expired while his application was pending, and USCIS then denied the application. *See* Ex. G, ECF No. 2-1; *Dhuka*, 716 F.3d at 158. The Neufeld memo, as applied to Todua, explains that although the expiration of his lawful status did not affect his *pending* application for adjustment, once his application was denied in February 2019, the date on which the Subsection (k) 180-day grace period began to accrue was March 21, 2017, Todua's last day of lawful status.

Todua also tries to distinguish himself from plaintiffs in *Dhuka* and *Chaudhry* by arguing that he was not relying on Subsection (k) at the time he filed his last application. Pl. Br., ECF No. 10 at 6. Todua alleges he had lawful status for the purposes of Subsection (c) because he was not an "unauthorized alien" when he filed his last application. Pl. Br., ECF No. 10 at 6. *See* Am. Compl. ¶ 19. Todua borrows the terminology "unauthorized alien" from 8 C.F.R. § 274a.12(c)(9), a regulation to 8 U.S.C. 1324a.[7] The regulation provides that "an alien will not be deemed to be

---

[7] 274A(h)(3) of the INA, codified at 8 U.S.C 1324(h)(3) is called "unlawful employment of aliens" and governs whether an employer may legally hire an alien.

an 'unauthorized alien' as defined in section 274A(h)(3) of the Act" for the purposes of Section 1255(c)(8) while his I-485 application is pending. 8 C.F.R. § 274a.12(c)(9). However, this language does not create an admission status as required by Section 1255. Rather, it permits an employer to legally hire a noncitizen while his application is pending. *See* 8 U.S.C 1324 et seq. In making this argument, Todua conflates his "lawful presence" with "lawful status," which are discrete terms in the immigration context. *See Chaudhry*, 705 F.3d at 292 (citing *In re L–K*, 23 I. & N. Dec. 677, 680–81 (BIA 2004)). That Todua was not an "unauthorized alien" whom an employer could legally hire while his applications were pending does not mean he had lawful *status* while the applications remained pending. *See Chaudhry*, 705 F.3d at 292 ("Indeed, just that ordinarily happens when a person's status becomes unlawful while she has a pending adjustment application."); *see also Bokhari v. Holder*, 622 F.3d 357, 361 (5th Cir. 2010).

Even beyond his attempts to distinguish cases Defendants cite, Todua's arguments are unavailing. The USCIS regulation defining "lawful immigration status" provides that "lawful immigration status" "*will only* describe the immigration status of an individual" in one of six categories. *See* C.F.R. § 245.1 (emphasis added). Because Todua did not fall into one of the six categories when he filed his first application, Todua was out of lawful immigration status, and thus could only rely on Subsection (k)'s 180-day grace period for his eligibility to adjust status.

Todua has not provided any support for the proposition that lawful status would continue to accrue from his first subsequently denied application, that the absence of a gap between successive petitions has any effect on his lawful status, or that he had lawful status after March 21, 2017 for any other reason. USCIS's interpretation of the law was reasonable.

  b. <u>*Through no fault of his own or for technical reasons*</u>

In the alternative, Todua alleges that even if he did fail to maintain a lawful status, Subsection (c) does not render him ineligible for adjustment of status because he did so "through no fault of his own or for technical reasons." Am. Compl. ¶ 22. He alleges USCIS's inaction in denying his first application, causing him to then file a second application while the first was pending, constitutes a technical reason. *Id.* ¶ 24.

The parenthetical exception in §1255(c)(2) provides that an applicant's failure to maintain lawful immigration status will not bar eligibility if the failure occurred "through no fault of his own or for technical reasons." §1255(c)(2). The INA does not define "no fault of his own or technical reasons," but again, a regulation provides a definition. *See* 8 C.F.R. § 1245.1(d)(2). The regulations limit the realm of possible circumstances which "through no fault of his own" and "for technical reasons" encompass. *See Peters v. Barr*, 954 F.3d 1238, 1241 (9th Cir. 2020). Under the regulation, only four categories of circumstances exist, *see* 8 C.F.R. § 1245.1(d)(2), of which only one is potentially relevant here:

> (ii) A technical violation resulting from inaction of the Service (as for example, where an applicant establishes that he or she properly filed a timely request to maintain status and the Service has not yet acted on that request). An individual whose refugee or asylum status has expired through passage of time, but whose status has not been revoked, will be considered to have gone out of status for a technical reason.

8 C.F.R. § 1245.1(d)(2). The Ninth Circuit recently explained that "[c]onsistent with these definitions, a technical violation occurs under the regulation only if the violation is a consequence or effect of USCIS's inaction on a pending application. In other words, the alien's lapse in lawful status must be caused by bureaucratic delay." *Attias v. Crandall*, 968 F.3d 931, 937 (9th Cir. 2020).

Todua has not alleged any cognizable inaction by USCIS under 8 C.F.R. § 1245.1(d)(2)(ii). As we have explained, Todua's lawful status had already lapsed when he filed his I-485 application and his concurrently filed Form I-140 employment-based immigrant visa petition. When USCIS

denied Todua's first I-485, it denied his application to adjust status because its earlier denial of his underlying I-140 petition rendered him ineligible to adjust status under §1255(a). *See* Ex. B, ECF No. 2-1 at 7–8. Even if Todua's petition and applications were timely filed requests to *maintain* status—as opposed to requests for new status—within the meaning of 8 C.F.R. § 1245.1(d)(2)(ii), USCIS took action by denying his requests. As Todua's lapse in lawful status was not caused by USCIS's bureaucratic delay, his failure to maintain lawful status was not for "no fault of his own or technical reasons." We cannot find USCIS acted in an arbitrary or capricious way.

### 2. Whether Todua's August 2020 parole constituted a new "admission" for statutory purposes

Todua alternatively contends that 1255(c)(2)'s bar to adjustment does not apply to him because his most recent application for adjustment of status was based on his August 5, 2020 entry on advance parole. *See* Pl. Br. in Opp., ECF No. 10 at 2–4. In other words, Todua argues he was in lawful status "since entry" because he filed his recent application while he was under a grant of parole.

The Attorney General may grant adjustment to any noncitizen "who was inspected and admitted or paroled into the United States." 8 U.S.C. § 1255(a); *Zheng v. Gonzales*, 422 F.3d 98, 116 (3d Cir. 2005). However, Section 1255(c)(2) requires the applicant "to maintain continuously a lawful status *since entry* into the United States." § 1255(c)(2) (emphasis added). The implementing regulations define an individual with "lawful immigration status" as "[a]n alien admitted to the United States in nonimmigrant status as defined in section 101(a)(15) of the Act, *whose initial period of admission has not expired* ..." 8 C.F.R. § 245.1(d)(1)(ii) (emphasis added). Crucially, "the departure and subsequent reentry of an individual who has not maintained a lawful immigration status *on any previous entry* into the United States does not erase the [§ 1255(c)(2)] bar to adjustment of status." (emphasis added). 8 C.F.R. § 245.1(d)(3).

13

Todua contends the statute refers to the last entry on which the applicant seeks adjustment of status. Pl. Br., ECF No. 10 at 3. We disagree. The INA's language is unambiguous in requiring that a noncitizen maintain continuous lawful status since entry into the United States. § 1255(c)(2). Todua entered the United States in 2017 and failed to maintain lawful status on his 2017 initial entry. His subsequent reentry cannot cure his failure to maintain a lawful status since his arrival. *See* 8 C.F.R. § 245.1(d)(3); *see also Rubi v. Sec'y, U.S. Dept' of Homeland Security*, 805 F. App'x 832, 836 (11th Cir. 2020) (holding applicant was subject to the Section 1255(c)(2) bar because of her unlawful status during her initial stay in the United States). Nor can Todua benefit from Subsection (k)'s exception to Subsection (c)'s continuous lawful status requirement. "Section 1255(k)'s requirement of a lawful admission, unlike § 1255(a)'s, applies even if the nonimmigrant has been paroled into the United States…" *Sanchez v. Mayorkas*, 141 S. Ct. 1809, 1811 n. 1 (2021). Todua had one lawful admission into the United States and he has been out of lawful status for longer than 180 days in aggregate since his lawful status lapsed. Accordingly, USCIS properly determined that Todua was statutorily ineligible to adjust status, and we will dismiss Todua's APA claim.

### B. We will dismiss Todua's claim seeking relief under the mandamus statute

Defendants seek dismissal of Todua's amended complaint in its entirety. *See* ECF No. 9. Their brief does not address Count II, Todua's claim alleging USCIS's denial of his applications to adjust status violates 28 U.S.C. § 1361, but we assume Defendants seek dismissal of this claim under Rule 12(b)(6). *See generally* ECF No. 9-1. Todua alleges his "administrative file demonstrates that he meets all the requirements for the applications to adjust status to be approved… this Court has the power to compel action to perform that duty." Am. Compl. ¶ 32. Thus, Todua asks us to compel USCIS to *approve* his application, which goes a step beyond the

"litany of cases" seeking to compel USCIS to adjudicate a petition. *See, e.g., Kale v. Mayorkas*, No. CV 21-08095 (FLW), 2021 WL 2652124, at *3 (D.N.J. June 28, 2021) (collecting cases).

Section 1361 provides "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief under section 1361 is an "extraordinary remedy" which "will issue only to compel the performance of 'a clear nondiscretionary duty.' " *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). For mandamus to issue, the plaintiff must allege that he is owed a legal duty that is "a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.'" *Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987); *see also United States ex rel. Vaso v. Chertoff*, 369 F. App'x 395, 400 (3d Cir. 2010).

We cannot compel USCIS to approve Todua's application to adjust status. USCIS's decision on an application to adjust status is committed entirely to its discretion. *See* 8 U.S.C. 1255(a); *United States ex rel. Vaso*, 369 F. App'x at 400.[8]

### C. We will dismiss Todua's due process claim

Defendants argue Todua fails to state a Fifth Amendment claim because he has no protected liberty or property rights to the adjudication of his adjustment of status applications. *See* ECF No. 9-1 at 12. Procedural due process is the "opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). To state a claim for procedural due process, Todua must allege the government deprived him of a cognizable liberty or property interest

---

[8] *Cf Pinho*, 432 F.3d at 204 ("Determination of eligibility for adjustment of status—unlike the granting of adjustment itself—is a purely legal question and does not implicate agency discretion.").

without providing notice or meaningful opportunity to be heard. *See Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 396 (3d Cir. 1999); *see also Mudric v. Attorney Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir.2006).

§ 1255 commits the decision to grant an adjustment of status to the discretion of the Attorney General. While a noncitizen may be eligible for an adjustment of status, "he is not entitled to such benefits as a constitutional matter. There is no constitutional right to asylum [or adjustment] per se." *See Mudric*, 469 F.3d at 98. Todua tries to plead around this barrier to his claim by alleging he was denied "health care benefits, indefinite employment eligibility, and other benefits, which are available to lawful permanent residents" rather than identifying his entitlement to an adjustment of status as the basis for his claim. *See* Am. Compl. ¶ 34. But Todua has not set forth any facts showing that he was deprived of any process to which he was entitled, setting aside that Todua's entitlement to the benefits he lists would flow from his status as a lawful permanent resident. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' "). As Todua has not alleged Defendants deprived him of a cognizable liberty or property interest without providing notice or meaningful opportunity to be heard, we will dismiss Count III.

## IV.     CONCLUSION

For the foregoing reasons, we will grant Defendants' motion to dismiss. We will dismiss Plaintiff's amended complaint with prejudice as amendment would be futile. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

DATED:          OCTOBER 26, 2021                         BY THE COURT:

/s/ Chad F. Kenney
_____
CHAD F. KENNEY, JUDGE